**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Scottsdale Gas Company LLC, <br><br> Plaintiff, <br><br> vs. <br><br> Tesoro Refining & Marketing Company LLC, et al., <br><br> Defendants. | No. CV-19-05291-PHX-SPL <br><br> **ORDER** |

Before the Court is Scottsdale Gas Company LLC's (the "Plaintiff") Application for Temporary Restraining Order Without Notice and Preliminary Injunction. (the "Motion"). (Doc. 10) The Court granted the Plaintiff's request for a temporary restraining order and ordered defending parties Tesoro Refining & Marketing Company LLC and Treasure Franchise Company LLC (together, the "Defendants") to respond to the Motion. (Docs. 11, 15) On October 10, 2019, the Court held a hearing (the "PI Hearing") to address the Plaintiff's request for a preliminary injunction. At the PI Hearing, oral argument was provided by both parties. The Court's ruling is as follows.

**I. Background**

The Plaintiff operates a retail convenience store and gas station at 10809 North Frank Lloyd Wright Boulevard in Scottsdale, Arizona (the "Premises"). (Doc. 10 at 2) The Plaintiff entered into a franchise agreement and a gasoline agreement (the "Gasoline Agreement") with the Defendants. (Doc. 10 at 2–3) Under the franchise agreement, the

Defendants have a reversionary leasehold interest in the Premises. (Doc. 10 at 2) Under the Gasoline Agreement, the Defendants are responsible for supplying the Plaintiff with gasoline. (Doc. 10 at 2) It is unclear what role the Defendants play in helping the Plaintiff process customer credit card payments.

On June 13, 2019, the Defendants sent a notice of termination (the "Notice") to the Plaintiff seeking to terminate the Gasoline Agreement. (Doc. 10 at 3) The Plaintiff initiated this lawsuit under the Petroleum Marketing Practices Act (the "PMPA") seeking to prevent the Defendants from terminating the Gasoline Agreement. (Doc. 1) On October 3, 2019, the Plaintiff filed the Motion, alleging that the Defendants had engaged in illegal, extrajudicial means of seeking to terminate the Gasoline Agreement. (Doc. 10) The Court issued a temporary restraining order (Doc. 11) and held the PI hearing on October 10, 2019, to address whether a preliminary injunction should issue.

## II. Legal Standard

"A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (emphasis omitted); see also *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted) ("A preliminary injunction is an extraordinary remedy never awarded as of right").

"A plaintiff seeking a preliminary injunction must show that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm without an injunction, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest." *Winter*, 555 U.S. at 20. "But if a plaintiff can only show that there are 'serious questions going to the merits'— a lesser showing than likelihood of success on the merits— then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor,' and the other two Winter factors are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)). Under this serious questions

variant of the *Winter* test, "[t]he elements . . . must be balanced, so that a stronger showing of one element may offset a weaker showing of another." *Lopez*, 680 F.3d at 1072.

**III.     Analysis**

The Plaintiff seeks a preliminary injunction preventing the Defendants from (i) terminating the Gasoline Agreement between the parties; (ii) acting on any reversionary leasehold interest in the Premises; (iii) taking any extrajudicial actions affecting the Plaintiff or its ability to operate a retail store and gas station at the Premises; and (iv) causing any agents, employees or contractors of the Defendants from entering onto the Premises, except for performing acts in the ordinary course of business. (Doc. 10 at 13)  The Plaintiff also seeks an injunction requiring the Defendants to continue (i) their relationship with the Plaintiff as a supplier of gasoline, and (ii) processing credit cards in the same manner as before the Defendants sought to terminate the Gasoline Agreement. (Doc. 10 at 13)  In response, the Defendants argue that the Plaintiff is not entitled to a preliminary injunction in this case because the Plaintiff cannot demonstrate (i) that it is entitled to a preliminary injunction under the PMPA or (ii) that the Plaintiff has a high likelihood of success on the merits of its claims under the Federal Rule of Civil Procedure 65 standard. (Doc. 15 at 2, 10)

**A.     Injunctive Relief Under the Petroleum Marketing Practices Act**

The PMPA prohibits the termination or nonrenewal of a franchise (i) outside of specifically enumerated reasons and (ii) upon the franchisor's compliance with PMPA's notice requirements. *Khorenian v. Union Oil Co. of California*, 761 F.2d 533, 535 (9th Cir. 1985).  A franchisee may bring an action to prevent termination or non-renewal under the PMPA if the franchisor has failed to comply with the statutory requirements. *Id*.; 15 U.S.C. § 2805.  In particular, franchisees may obtain preliminary injunctive relief if (1) they establish that the franchise has been terminated and that "there exists sufficiently serious questions going to the merits to make such questions a fair ground for litigation," and (2) a court determines that, on balance, the hardships imposed upon the franchisor by issuance of preliminary injunctive relief are less than the hardships that would be imposed upon the

franchisee in the absence of such relief. *Id.*; 15 U.S.C. § 2805(b)(2)(A) and (B).

The Defendants argue that the Court cannot issue an injunction under the PMPA because the Plaintiff has failed to submit a timely application for an injunction. (Doc. 15 at 2) The Defendants argue that the deadline for filing a request for an injunction under the PMPA is 90 days. 15 U.S.C.A. § 2805(b)(4) (stating "the court need not exercise its equity powers to compel continuation or renewal of the franchise relationship if such action was commenced . . . more than 90 days after the date on which notification pursuant to section 2804(a) of this title was posted or personally delivered to the franchisee . . . ."). The Defendants argue that the Notice was provided to the Plaintiff on June 13, 2019, which is more than 90 days before the Plaintiff filed the Motion on October 3, 2019. (Doc. 15 at 2) At the PI Hearing, the Plaintiff did not dispute that the Motion was filed after the 90-day deadline imposed by the PMPA. However, the Plaintiff argues that an untimely filing does not preclude the Court from issuing a preliminary injunction. At this time, the Court declines to exercise its discretion to issue a preliminary injunction under the terms of the PMPA because the Motion was untimely.

**B.      Injunctive Relief Under Federal Rule of Civil Procedure 65**

In deciding whether to issue a preliminary injunction, courts consider whether the moving party has demonstrated (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if the preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest. *Dollar Rent A Car of Washington, Inc. v. Travelers Indem. Co.*, 774 F.2d 1371, 1374 (9th Cir. 1985). The moving party may meet its burden by demonstrating either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips sharply in its favor. *Id.* An essential prerequisite to the granting of a preliminary injunction is a showing of irreparable injury to the moving party in its absence. *Id.* at 1374–75.

1. Likelihood of Success on the Merits

In the Motion, the Plaintiff does not present a specific argument about why it is likely to succeed on the merits of its claims. Instead, the Plaintiff discusses the intent of the PMPA to protect gasoline dealers, and the Plaintiff argues that the allegations in the complaint "establish that a serious question exists that will have to be litigated". (Doc. 10 at 11) At the hearing, the Plaintiff argued that the Defendants' history of allowing the Plaintiff to make late tax and rent payments demonstrated that the Defendants' choice to terminate the Gasoline Agreement was unfair as a matter of principal and under the law, and, as a result, the Plaintiff will be successful on its claims. The Plaintiff admits that the Premises landlord allows the Plaintiff to submit late payments for rent, but the Plaintiff argues that it always pays its debts within one day of being asked by the Defendants. In response, the Defendants argue that the Plaintiff does not have a strong likelihood of success on its claims because the Defendants were properly within their rights to terminate the Gasoline Agreement due to the Plaintiff's repeated failure to comply with the Gasoline Agreement, including failure to remit timely payments of bills due. (Doc. 15 at 6)

The Court finds that the Plaintiff has failed to demonstrate that it has a strong likelihood of success on the merits of this case. At no point during the PI Hearing did the Plaintiff rebut the Defendants' claim that the Plaintiff has failed to remit timely payments of rent and taxes. Instead, the Plaintiff argues that late payments have historically been permitted by the Defendants; thus, the Defendants should not be allowed to use the Plaintiff's history of late payments against it to terminate the Gasoline Agreement. Solely for the purposes of resolving the Motion, the Court finds that the Plaintiff's arguments about permissible late payments does not rise to the level of a strong likelihood of success in this case. For the same reasons, the Court finds that the Plaintiff has not demonstrated that serious questions have been raised as to the merits of this case. Even if the Defendants consistently allowed the Plaintiff to violate the terms of the Gasoline Agreement through making late payments, that does not absolve the Plaintiff of its contractual obligation to make timely payments as required by the terms of the Gasoline Agreement. Accordingly,

the Court finds that this factor weighs heavily against issuing a preliminary injunction.

2. <u>Possibility of Irreparable Injury</u>

The Plaintiff argues that an absence of a preliminary injunction will require its business to close, constituting an irreparable injury. (Doc. 10 at 12) Specifically, the Plaintiff argues that the Defendants' actions have completely disrupted the Plaintiff's ability to operate its business. (Doc. 10 at 12) The Defendants argue that the Plaintiff's alleged injury is a monetary injury, which is generally not considered an irreparable injury. (Doc. 15 at 10–11) The Court recognizes that the Plaintiff's harm is primarily monetary. However, because of the special relationship between the Plaintiff, a gas station, and the Defendants, as gasoline suppliers and credit card transaction processors, the Court finds that the Plaintiff has demonstrated that it will suffer irreparable harm if a preliminary injunction does not issue. It is clear to the Court that without a preliminary injunction, the Plaintiff will not be able to offer gasoline to its customers or accept credit card payments for any products or services rendered, which would be a crushing blow to the Plaintiff's ability to operate its business. Accordingly, the Court finds that this factor weighs in favor of issuing a preliminary injunction.

3. <u>Balance of Hardships</u>

The Plaintiff argues that a balance of the hardships tips in its favor because the (i) the harm potentially suffered to the Plaintiff is the loss of its business, and (ii) the Defendants will not suffer any hardships. (Doc. 10 at 12) In response, the Defendants argue that a balance of the hardships tips in their favor because they have been "forced to cover nearly $45,000 in past due rent and taxes." (Doc. 15 at 8) The Court finds that a balance of the hardships in this case is a neutral factor, not weighing in favor of either party. A balancing of the hardships in this case is neutral because (i) failure to implement a preliminary injunction could effectively shut down the Plaintiff's business, and (ii) requiring the Defendants to maintain a contract upon which the Plaintiff has defaulted is unjust and against the public interest. Accordingly, the Court finds that this factor does not weigh in favor of either party.

4. <u>Public Interest</u>

The Plaintiff argues that public policy favors a preliminary injunction because the PMPA seeks to protect small business owners from big corporations. (Doc. 10 at 12) The Defendants do not address the issue of whether an injunction would serve the public interest. The Court finds that this factor does not weigh in favor of either party because public policy favors both small business development and timely payment of debts. In weighing all of the factors, the Court finds that the Plaintiff has failed to demonstrate that the extraordinary burden of a preliminary injunction is appropriate in this case.

Accordingly,

**IT IS ORDERED** that the Plaintiff's request for a preliminary injunction set forth in the Plaintiff's Application for Temporary Restraining Order Without Notice and Preliminary Injunction (Doc. 10) is **denied**; and

**IT IS FURTHER ORDERED** that the temporary restraining order implemented by the Court's Order (Doc. 11) is lifted.

Dated this 11th day of October, 2019.

Honorable Steven P. Logan
United States District Judge