**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Scottsdale Gas Company LLC, | No. CV-19-05291-PHX-SPL |
| Plaintiff, | **ORDER** |
| vs. | |
| Tesoro Refining & Marketing Company LLC, et al., | |
| Defendants. | |

Before the Court is a Motion for Preliminary Injunction (the "Motion") filed by Tesoro Refining & Marketing Company LLC and Treasure Franchise Company, LLC (collectively "Defendants"). (Doc. 30) The Court denied Defendants' initial request for a Temporary Restraining Order Without Notice and ordered Scottsdale Gas Company LLC ("Plaintiff") to respond to the Motion for Preliminary Injunction. (Docs. 30, 32) On February 25, 2020, the Court held a hearing (the "PI Hearing") to address the Motion. The Court's ruling is as follows.

**I. Background**

Plaintiff owns a retail gas station and convenience store located in Scottsdale, Arizona (the "Premises"). (Doc. 1 at 1) Plaintiff is a tenant under a commercial lease with a third-party landlord National Retail Properties LP (known as "NNN"). (Doc. 1 at 1-2) Plaintiff was assigned a leasehold interest to the Premises as part of a series of related agreements (the "Assignment Agreements") involving Defendants. (Doc. 1 at 2) On

September 30, 2019, Plaintiff filed the Complaint against Defendants, alleging breach of contract and violations under the Petroleum Marketing Practices Act, 15 U.S.C. §§ 2801-2807. (Doc. 1)

On October 3, 2019, Plaintiff filed an Application for Temporary Restraining Order and Preliminary Injunction seeking to enjoin Defendants from terminating a gasoline agreement between the parties and interfering with Plaintiff's ability to operate its store, among other relief. (Doc. 10) The Court granted the temporary restraining order but, after holding a hearing, denied the preliminary injunction. (Doc. 17)

Subsequently, on October 23, 2019, Defendants answered the Complaint. (Doc. 18) In addition, Defendants asserted counterclaims for breach of contract, breach of good faith and fair dealing, and declaratory relief. (Doc. 18) On February 12, 2020, Defendants filed a Motion for Temporary Restraining Order without Notice and Motion for a Preliminary Injunction. (Doc. 30) Defendants argued that Plaintiff violated the parties' Assignment Agreements by rebranding the Premises under Shell Oil Company ("Shell"), and that Plaintiff should be barred during this litigation from displaying Shell signage and selling Shell gasoline. (Doc. 30) The Court denied the Temporary Restraining Order Without Notice and held the PI Hearing on February 25, 2020. (Doc. 32)

**II.     Legal Standard**

"A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (emphasis omitted). "A plaintiff seeking a preliminary injunction must show that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm without an injunction, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008). "But if a plaintiff can only show that there are 'serious questions going to the merits'— a lesser showing than likelihood of success on the merits— then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor,'

and the other two Winter factors are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)). Under this serious questions variant of the *Winter* test, "[t]he elements . . . must be balanced, so that a stronger showing of one element may offset a weaker showing of another." *Lopez*, 680 F.3d at 1072.

**III. Analysis**

Defendants seek a preliminary injunction preventing Plaintiff from using Shell signage and selling Shell gasoline on the Premises. (Doc. 30) In response, Plaintiff argues that Defendants are not entitled to a preliminary injunction because they have not satisfied the factors necessary to grant the Motion. (Doc. 33 at 1-2)

    A.    <u>Likelihood of Success on The Merits</u>

Defendants assert that they have a strong likelihood of success on the merits for their breach of contract claim because the Assignment Agreements explicitly prohibit Plaintiff from using any other branding besides "AM/PM" and "ARCO." (Doc. 30 at 5) In response, Plaintiff asserts that Defendants do not have a strong likelihood of success on the merits because Defendants' breach of contract claim is not premised on the Assignment Agreements. Instead, Plaintiff argues that the claim is premised on a franchise agreement that is referenced in the Assignment Agreements. (Doc. 33 at 9) Specifically, Plaintiff argues that the parties never executed a franchise agreement, so it cannot be the basis for any breach of contract liability. (Doc. 33 at 9) Additionally, Plaintiff argues that Defendants were the sole drafters of the Assignment Agreements, so any agreement (or lack thereof) to limit the usage of different branding on the Premises should be construed against Defendants. (Doc. 33 at 9)

The Court finds that Defendants have failed to demonstrate that they have a strong likelihood of success on the merits in this case. The parties executed a series of agreements in 2013 associated with Plaintiff moving onto the Premises. (Doc. 1 at 2-3) The Complaint mainly references an "Assignment and Assumption of Tenant's Leasehold Interest" as the basis for the parties' contractual relationship. (Doc. 1 at 2) The Countercomplaint mainly

references a "Gasoline Agreement," an "Assignment and Assumption of Tenant's Leasehold Interest," and a "Franchise Agreement." (Doc. 18) However, Defendants did not attach any such franchise agreement as an exhibit to the Countercomplaint or the Preliminary Injunction Motion. (Doc. 30-1) Because it is unclear which agreements actually governed the parties' dealings, Defendants have failed to show that they are likely to succeed on the merits of their claim. However, the Court finds that Defendants have shown that there are "serious questions going to the merits" of their claims. *See Shell Offshore, Inc.*, 709 F.3d at 1291.

### B. Possibility of Irreparable Harm

Defendants argue that they are suffering immediate and irreparable harm through Plaintiff's improper use of the Shell brand. Defendants assert that the Premises was branded with ARCO for over a decade and the change in branding has had a detrimental effect on brand awareness, good will, reputation, and consumer trust. (Doc. 30 at 6-7) In response, Plaintiff argues that Defendants fail to establish any irreparable harm. (Doc. 33 at 7-8) Plaintiff asserts that the ARCO signage was taken down in October of 2019, but Defendants did not claim that their reputation and brand awareness were being damaged at that time. (Doc. 33 at 7-8) Plaintiff argues that Defendants are now simply attempting to prevent competition on the Premises. (Doc. 33 at 7-8) Furthermore, Plaintiff argues that a representative of the landlord NNN approved the signage change. (Doc. 33 at 8)

The Ninth Circuit has recognized irreparable harm resulting from damage to brand awareness, goodwill, and reputation. *See Adidas Am., Inc. v. Skechers USA, Inc.,* 890 F.3d 747, 756 (9th Cir. 2018) (holding that evidence of loss of customer goodwill can support a finding of irreparable harm). Generally, however, the moving party must provide specific evidence of their attempt to carefully control their brand awareness and the confusion or loss of control that would result absent a preliminary injunction. *Id.* at 756-57. In addition, the moving party must show that the type of harm resulting from such damage cannot be fully compensated through monetary damages. *See Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) (noting that damage

4

to reputation or goodwill, because it is difficult to calculate, can qualify as irreparable harm).

Here, although Defendants make general allegations that the ARCO brand has been damaged, Defendants fail to provide specific evidence of the damage.[1] In addition, Defendants have not shown that any potential damage caused by Plaintiff selling Shell gasoline cannot be sufficiently compensated by an award of monetary damages upon a successful verdict. Therefore, the Court finds that the irreparable harm factor does not favor granting the preliminary injunction.

### C. Balance of Hardships

Defendants argue that the balance of equities tips in their favor because Plaintiff's actions are in a clear violation of the parties' Assignment Agreements. (Doc. 30 at 8) In addition, Defendants assert that Plaintiff assured them that it would not sell rebranded gasoline at the Premises prior to resolution of this case and the use of the Shell gasoline is in direct violation of that promise. (Doc. 30 at 8-9) In response, Plaintiff argues that the balance of equities is not in Defendants' favor because a denial of the Motion will cause Defendants negligible harm, if any. (Doc. 33 at 10) In contrast, Plaintiff asserts that it will suffer a great hardship if the Shell branding and gasoline are removed because it has already invested $100,000 to make the changes. (Doc. 33 at 10) At the PI Hearing, Plaintiff further argued that it tried to continue to purchase gasoline from Defendants, but Defendants refused. Plaintiff asserted that, in this way, any hardship resulting from it selling Shell gasoline was of Defendants' own making. Plaintiff further argued that its legal counsel made the assurance to Defendants' counsel that rebranded gasoline would not be sold on the Premises, but Plaintiff never authorized its counsel to make such a promise. Furthermore, Plaintiff asserted that this mistake did not create a hardship for Defendants because Defendants never relied on the promise.

The Court finds that the balance of the hardship in this case is a neutral factor, not

---

[1] At the PI Hearing, Defendants argued that ARCO-preferred customers will no longer want to buy gasoline at the Premises. However, this statement only alleges a loss of sales and does not explain any damage to the goodwill, brand awareness, and reputation of the ARCO brand.

weighing in favor of either party. A balancing of the hardships in this case is neutral because (i) implementing a preliminary injunction would prevent Plaintiff from selling gasoline on the Premises, effectively shutting down the Plaintiff's business, and (ii) public policy disfavors parties making assurances/agreements during the litigation process and acting in a way that differs from those assurances. Accordingly, the Court finds that this factor does not weigh in favor of either party.

D. Public Interest

Defendants argue that public policy favors enforcing contractual relationships between parties. (Doc. 30 at 9) Defendants also argue that public policy disfavors a party misrepresenting its intentions—as Plaintiff did here when it agreed not to sell rebranded gasoline on the Premises. (Doc. 30 at 9) In response, Plaintiff argues that the underlying purpose of this litigation is to establish the extent of the contractual dealings between the parties. (Doc. 33 at 10-11) Plaintiff argues that public policy regarding the enforcement of contracts cannot be a valid consideration until the Court makes a final determination as to the extent of the contractual relationship between the parties. (Doc. 33 at 10-11)

Here, although the Court agrees that public policy disfavors a party misrepresenting its intentions during litigation, the Court finds that this factor does not weigh in favor of granting the extraordinary relief of a preliminary injunction. It remains that the nature and extent of the parties' contractual dealings have yet to be determined, so any public policy considerations regarding the parties' contractual obligations are premature. Accordingly,

**IT IS ORDERED** that Defendants' request for a preliminary injunction as set forth in the Motion (Doc. 30) is **denied**.

Dated this 27th day of February, 2020.

Honorable Steven P. Logan
United States District Judge